## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, as Receiver of ) | |
| FIRST STATE BANK OF ALTUS, ) | |
| ALTUS, OKLAHOMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-686-M |
| ) | |
| GLOBAL INDUSTRIAL ) | |
| MANAGEMENT, LLC; ) | |
| FRED DON ANDERSON; ) | |
| MARK ARCIERO; ) | |
| WILLIAM. L. NEWLAND; ) | |
| THOMPSON-DODSON FARMS, LLC; ) | |
| KEITH DODSON, and ) | |
| GERALD RAY SMITH, ) | |
| ) | |
| Defendants. ) | |

### **ORDER**

Before the Court are plaintiff's Motion for Summary Judgment against Certain Defendants and plaintiff's Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment, on Certain Defendants' Counterclaims, both filed May 18, 2012. On June 8, 2012, defendants Mark Arciero ("Arciero"), William L. Newland ("Newland"), Thompson-Dodson Farms, LLC ("T-D Farms"), Keith Dodson ("Dodson"), and Gerald Ray Smith ("Smith") (collectively, "Defendants") filed their response. On June 15, 2012, plaintiff filed its Reply Brief in Support of Motion for Summary Judgment Against Certain Defendants, and on June 22, 2012, plaintiff filed its Reply Brief in Support of Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment on Certain Defendants' Counterclaims. Based upon the parties' submissions, the Court makes its determination.

I.  Background[1]

In 2008, each of the Defendants was a director and/or investor in Quartz Mountain Aerospace, Inc. ("QMA"), an Altus aerospace company that is now defunct.  Arciero, Newland, T-D Farms, and Smith executed certain promissory notes to the First State Bank of Altus, Altus, Oklahoma ("Bank"), and Dodson executed a personal guaranty of repayment of the T-D Farms promissory note to the Bank.  Defendants knew and intended that the proceeds from these loans would be provided to QMA to fund QMA's business operations.

On or about March 24, 2008, Arciero, for good and valuable consideration, executed and delivered to the Bank a promissory note in the original principal sum of $2,500,000 (the "Arciero Note").  Despite demand, Arciero has failed and refused to repay the indebtedness evidenced by the Arciero Note in accordance with the terms and conditions of the Arciero Note.  The principal amount of $1,626,595.87 is outstanding and past due under the Arciero Note, together with accrued interest through April 30, 2012 in the amount of $523,373.81, plus continuing interest of $512.54 per day thereafter until paid.

On or about April 1, 2008, Newland, for good and valuable consideration, executed and delivered to the Bank a promissory note in the original principal sum of $2,500,000 (the "Newland Note").  Despite demand, Newland has failed and refused to repay the indebtedness evidenced by the Newland Note in accordance with the terms and conditions of the Newland Note.  The principal amount of $1,700,482.90 is outstanding and past due under the Newland Note, together with accrued

---

[1]In their response, Defendants do not specifically dispute any of the facts set forth in plaintiff's statements of undisputed facts.  Pursuant to Local Civil Rule 56.1(c), the Court hereby deems these facts admitted for the purpose of summary judgment.

interest through April 30, 2012 in the amount of $576,418.63, plus continuing interest of $541.51 per day thereafter until paid.

On or about April 16, 2008, T-D Farms, for good and valuable consideration, executed and delivered to the Bank a promissory note in the original principal sum of $2,500,000 (the "T-D Farms Note"). On or about April 16, 2008, Dodson, for good and valuable consideration and for the purpose of securing the repayment of the T-D Farms Note, executed and delivered to the Bank a certain Guaranty Agreement whereby Dodson agreed to pay the indebtedness evidenced by the T-D Farms Note (the "Dodson Guaranty"). Despite demand, T-D Farms and Dodson have failed and refused to repay the indebtedness evidenced by the T-D Farms Note in accordance with the terms and conditions of the T-D Farms Note. The principal amount of $1,767,727.72 is outstanding and past due under the T-D Farms Note, together with accrued interest through April 30, 2012 in the amount of $567,382.84, plus continuing interest of $567.79 per day thereafter until paid.

On or about May 2, 2008, Smith, for good and valuable consideration, executed and delivered to the Bank a promissory note in the original and principal sum of $2,500,000 (the "Smith Note"). Despite demand, Smith has failed and refused to repay the indebtedness evidenced by the Smith Note in accordance with the terms and conditions of the Smith Note. The principal amount of $1,770,524.41 is outstanding and past due under the Smith Note, together with accrued interest through April 30, 2012 in the amount of $569,886.08, plus continuing interest of $568.91 per day thereafter until paid.

Defendants all allege that Paul Doughty ("Doughty"), the former CEO of the Bank, recruited and solicited them to assist the community in obtaining additional financing for QMA, a community job creation project. Defendants further allege that Doughty told them that they would have no

personal exposure or liability and that the Bank would secure certain life settlement agreements to provide full collateral and security for the loans. Additionally, Defendants allege that Doughty assured them that the Bank would not seek personal collections of the loans from them. However, the Bank's loan files do not contain a written or signed agreement between the Bank and any of the Defendants setting forth the above agreement. Additionally, the minutes of the meetings of the Bank's board of directors also contain no record of approval by the Bank's board of directors, or by the Bank's loan committee, of any agreement with any of the Defendants that the subject promissory notes and/or the personal guaranty were not or would not be enforceable or enforced in accordance with their express terms.

On July 31, 2009, the Bank was closed by the Oklahoma State Banking Department and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the Bank. On August 6, 2009, in accordance with 12 U.S.C. § 1821(d)(3)(B)(i), the FDIC as Receiver of the Bank ("FDIC-R") published notice of the closure of the Bank and the FDIC-R's appointment as receiver, and of the deadline of November 4, 2009 for the submission of any creditor claims against the Bank. In accordance with 12 U.S.C. § 1821(d)(3)(B)(ii), the FDIC-R republished such notice on September 8, 2009 and October 8, 2009. In accordance with 12 U.S.C. § 1821(d)(3)(C), on or about the date of initial publication of the notice of the FDIC-R's appointment as receiver of the Bank, the FDIC-R sent to all parties who appeared as creditors of the Bank according to the Bank's records, notice of claim filing requirements and of the claims filing deadline of November 4, 2009. Defendants all knew about the closure of the Bank and the appointment of the FDIC-R as receiver of the Bank on or before the November 4, 2009 claims bar date. However, none of the Defendants filed with the

FDIC-R any administrative claim against the Bank, either before or after the published claims bar date of November 4, 2009.

The FDIC-R brought the instant action on June 16, 2011, to enforce and collect upon the promissory notes and guaranty agreement set forth above. Defendants deny liability under the subject promissory notes and guaranty agreement and assert counterclaims against the FDIC-R. The FDIC-R now moves this Court for the entry of summary judgment against Defendants on all of the FDIC-R's claims against these Defendants. The FDIC-R also moves, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c), and 56, for dismissal, for judgment on the pleadings, or for summary judgment on Defendants' counterclaims.

II.     Defendants' Rule 56(d) Request

In their response, Defendants, pursuant to Federal Rule of Civil Procedure 56(d), seek deference or denial of the FDIC-R's motion for summary judgment in order to perform complete discovery in this matter. Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1)     defer considering the motion or deny it;
> (2)     allow time to obtain affidavits or declarations or to take discovery; or
> (3)     issue any other appropriate order.

Fed. R. Civ. P. 56(d). A party seeking to defer a ruling on a motion for summary judgment under Rule 56(d) must file an affidavit explaining why facts precluding summary judgment cannot be presented, including identifying the probable facts not available and what steps have been taken to obtain these facts. *See Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). Additionally, in the Tenth Circuit, the party "also must explain how additional time will

enable him to rebut movant's allegations of no genuine issue of fact." *Id.* (internal quotations and citations omitted).

Having carefully reviewed Defendants' response, including the affidavits of Smith and Dodson, the Court finds that its ruling on the FDIC-R's motion for summary judgment should not be deferred under Rule 56(d). Specifically, the Court finds that the affidavits of Smith and Dodson fail to identify any specific facts which would create a genuine issue of material fact. While both Smith and Dodson state that they believe certain individuals have information regarding the transactions, neither Smith nor Dodson state what specific information these individuals would have.

Additionally, the FDIC-R's motion for summary judgment is based upon the contention that Defendants' affirmative defenses are barred by 12 U.S.C. § 1823(e). Two of the requirements of § 1823(e) is that the agreement has been an official record of the depository institution and any approval of the agreement shall be reflected in the minutes of the board of directors or loan committee. Defendants have not disputed that the complete loan files of the Bank and board minutes have already been provided to them, and these documents have been attached to the FDIC-R's motion for summary judgment. Because the only documents required for this Court to rule on the FDIC-R's motion for summary judgment have been produced to Defendants and are before this Court, the Court finds no further discovery is necessary and, thus, there is no need to defer any ruling on the FDIC-R's motion for summary judgment.

III.   Standards of Review

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

When reviewing a motion for judgment on the pleadings, a court applies the same standard of review applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A motion to dismiss brought pursuant to Rule 12(b)(1) addresses a court's subject matter jurisdiction, and the party asserting jurisdiction bears the burden of proving that the court has subject

matter jurisdiction over his claims.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Through a Rule 12(b)(1) motion,

> a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (internal citations omitted).

IV.   Discussion

   A.   FDIC-R's Claims

The FDIC-R has brought breach of contract claims against Defendants, seeking to enforce and collect upon the promissory notes and guaranty agreement.  Defendants do not dispute that they executed the promissory notes and/or guaranty agreement, nor do they claim to have paid any of the debt owed.  Defendants, however, have asserted various affirmative defenses which are based upon Doughty's alleged assurances that Defendants would not be required to pay their promissory notes and/or guaranty agreement and that payment would come from other sources.  The FDIC-R contends that all of Defendants' affirmative defenses are barred by 12 U.S.C. § 1823(e).  Specifically, the FDIC-R contends that Defendants' affirmative defenses depend upon alleged representations or assurances by Doughty, or agreements or understandings with Doughty, that do not satisfy the requirements of 12 U.S.C. § 1823(e).[2]

Section 1823(e)(1) provides:

---

[2] In their response, Defendants do not address the FDIC-R's contentions regarding § 1823(e).

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement –
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

The purposes of § 1823(e) were set forth by the United States Supreme Court in *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86 (1987) as follows:

> One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities and when the FDIC is deciding whether to liquidate a failed bank, or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank. The last kind of evaluation, in particular, must be made with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services. Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.
>
> A second purpose of § 1823(e) is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials,

> and prevent fraudulent insertion of new terms, with the collusion of
> bank employees, when a bank appears headed for failure.

*Id.* at 91-92 (internal quotations and citations omitted).

"The burden of establishing that an applicable agreement satisfies the requirements of section 1823(e) lies with [the party seeking to enforce the agreement]." *Fed. Deposit Ins. Corp. v. Oldenburg*, 34 F.3d 1529, 1551 (10th Cir. 1994). Additionally, the term "agreement" has been broadly interpreted under § 1823(e). *See id.* Further,

> [s]cattered evidence in corporate records from which one could infer
> the existence of an agreement does not meet the requirements of the
> statute. The purpose of the doctrine is certainty and an "inference"
> of an alleged agreement does not meet the requirements of § 1823(e).

*Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1579 (10th Cir. 1993) (internal quotations and citations omitted). "Finally, knowledge of the misrepresentation by the FDIC prior to its acquisition of the note is not relevant to whether § 1823(e) applies." *Langley*, 484 U.S. at 94.

Having carefully reviewed the parties' submissions, the Court finds that the arrangements and agreements Defendants allege they had with Doughty are "agreements" subject to the requirements of § 1823(e). The Court further finds that these arrangements/agreements do not meet any of the requirements of § 1823(e). Specifically, the Court finds there is absolutely no evidence that the alleged arrangements/agreements (1) were in writing; (2) were contemporaneously executed by the Bank and Defendants; (3) were approved by the Bank's board of directors or its loan committee, as reflected in the minutes of the board or the loan committee; or (4) were, continuously, from the time of their execution, an official record of the Bank. The Court also finds that any alleged knowledge of the circumstances surrounding the promissory notes and/or guaranty agreement prior to the FDIC-R becoming the receiver for the Bank does not relieve Defendants of

their burden of establishing the requirements of § 1823(e).  Accordingly, the Court finds that all of Defendants' affirmative defenses to the FDIC-R's claims are barred by § 1823(e) as a matter of law.

Therefore, because the undisputed facts demonstrate that Defendants have breached their obligations under the promissory notes and the guaranty agreement, and because all of Defendants' affirmative defenses are barred by § 1823(e) as a matter of law, the Court finds that the FDIC-R is entitled to summary judgment on its claims against Defendants.

### B. Defendants' Counterclaims

The FDIC-R moves for dismissal, for judgment on the pleadings, or for summary judgment on the counterclaims alleged by Defendants.  The relief sought by the FDIC-R varies, depending on the nature of the counterclaims alleged and whether they assert claims based on alleged actions of Doughty or the Bank ("pre-receivership claims") or based on post-receivership actions of the FDIC-R itself ("post-receivership claims").

#### 1. Pre-receivership claims

With respect to the pre-receivership claims, which include the First Claim through Fourth Claim, and portions of the Sixth Claim and Seventh Claim, the FDIC-R moves the Court to (1) dismiss all such claims, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, or (2) in the alternative, grant the FDIC-R summary judgment on all such claims pursuant to Rule 56. Specifically, the FDIC-R contends that the pre-receivership claims must be dismissed for lack of subject matter jurisdiction because Defendants did not comply with the exhaustion requirements of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

Defendants assert that requiring them to submit claims under the administrative procedures provided by FIRREA would be a vain and useless act subject to the whims of the FDIC to

completely eliminate any remedy for its transgressions. Defendants also assert that they received no official notice of the claims bar date. Defendants further assert that as the FDIC-R initiated this action against Defendants years after the Bank's takeover, it is clear that the FDIC-R has considered, and denied, any remedies that Defendants would have under FIRREA. Defendants, thus, contend that requiring them to pursue a dead-end administrative procedure would not serve the legislative purpose of FIRREA, would increase the length and expense of the parties' legislation, and would stretch the application of FIRREA beyond its logical extreme.

FIRREA establishes a set of mandatory procedures for filing and processing claims against the assets of failed financial institutions, like the Bank, for whom the FDIC has been appointed receiver. *See Heno v. Fed. Deposit Ins. Corp.*, 20 F.3d 1204, 1207 (1st Cir. 1994). FIRREA requires claimants to submit their claims to the FDIC within a specified time for adjudication. *See* 12 U.S.C. §§ 1821(d)(3) *et seq.* Should a timely claim be denied or ignored by the FDIC, the claimant may then, and only then, file suit in federal district court. *See* 12 U.S.C. § 1821(d)(5)-(6). FIRREA specifically constrains judicial review as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). "The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed."

*McCarthy v. Fed. Deposit Ins. Corp.*, 348 F.3d 1075, 1078 (9th Cir. 2003). The only exception to this provision is found in 12 U.S.C. § 1821(d)(5)(C)(ii), which provides:

> Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if –
> > (I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and
> > (II) such claim is filed in time to permit payment of such claim.

12 U.S.C. § 1821(d)(5)(C)(ii).

> The notice described in § 1821(d)(5)(C)(ii)(I) is only notice of appointment of the receiver, unlike the notice required by § 1821(d)(3)(B) which informs potential claimants of the filing deadline. Thus, in order to qualify under this exception, a late-filing claimant must show that the claimant not only received no notice of the filing deadline, but also received no notice of the appointment of the receiver. *Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891-92 (8th Cir. 1994).

*Sapp v. Fed. Deposit Ins. Corp.*, 876 F. Supp. 249, 252 (D. Kan. 1995).

"Failure to participate in the administrative claims review process is a 'jurisdictional bar' to judicial review." *Heno*, 20 F.3d at 1207. The exhaustion rule applies both to creditors and debtors. *See McCarthy*, 348 F.3d at 1077-1080; *Stamm v. Paul*, 121 F.3d 635, 640-42 (11th Cir. 1997); *Lloyd v. Fed. Deposit Ins. Corp.*, 22 F.3d 335, 337 (1st Cir. 1994); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 389 (3d Cir. 1994). Thus, when a debtor claimant has been notified of the appointment of the FDIC as receiver and has nonetheless failed to initiate an administrative claim within the filing period, the debtor claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court.

In the case at bar, it is undisputed that Defendants had notice, before the claims bar date, of the Bank's failure and the FDIC-R's appointment as receiver. It is further undisputed that Defendants never filed with the FDIC-R any administrative claim against the Bank, either before or after the published claims bar date of November 4, 2009. Because Defendants did not comply with the exhaustion requirements of FIRREA, the Court finds that it does not have subject matter jurisdiction over Defendants' pre-receivership claims and that these claims, therefore, must be dismissed.[3]

### 2. Post-receivership claims

With respect to all of the post-receivership claims, which include the Fifth Claim ("Impairment of Collateral") and portions of the Sixth Claim (RICO – § 1962(b)) and Seventh Claim (RICO – § 1962(c)), the FDIC-R moves the Court to enter judgment on the pleadings in favor of the FDIC-R pursuant to Rule 12(c). In relation to the Fifth Claim, the FDIC-R contends that this claim fails because Oklahoma does not recognize such a claim for "impairment of collateral." In their response, Defendants do not address the FDIC-R's contentions regarding the Fifth Claim. The Court, accordingly, finds that Defendants have conceded this part of the FDIC-R's motion and finds that judgment should be entered in favor of the FDIC-R on Defendants' Fifth Claim for impairment of collateral.

In relation to the RICO claims, the FDIC-R contends that it cannot be sued for RICO violations. Specifically, the FDIC-R contends that a RICO claim can not lie against any federal agency, including the FDIC.

---

[3] The Court would note that even if this Court had subject matter jurisdiction over Defendants' pre-receivership claims, said claims would be barred by § 1823(e) for the same reasons set forth in Section IV(A).

> [I]t is clear that there can be no RICO claim against the federal government. Section 1962 states a requirement of "racketeering activity" as a predicate for a civil RICO action. Section 1961(1), in turn, defines "racketeering activity," which requires that the defendant be, variously, "chargeable," "indictable," or "punishable" for violations of specific state and federal criminal provisions. The assertion . . . that the [federal agency] was engaged in a RICO conspiracy under section 1962(d) was patently defective as a matter of law, since it is self-evident that a federal agency is not subject to state or federal criminal prosecution.

*Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (internal citation omitted); *see also Southway v. Cent. Bank of Nigeria*, 198 F.3d 1210, 1215 n.5 (10th Cir. 1999) ("In *Berger*, the Sixth Circuit correctly held that a federal agency was not subject to a civil RICO claim"); *McNeily v. United States*, 6 F.3d 343, 350 (5th Cir. 1993) (finding FDIC cannot be sued under RICO).

Based upon the above case law, the Court finds that Defendants can not state any RICO claims against the FDIC-R. Accordingly, the Court finds that judgment should be entered in favor of the FDIC-R on those portions of Defendants' Sixth Claim and Seventh Claim alleging RICO claims against the FDIC-R itself.

V. Conclusion

For the reasons set forth above, the Court GRANTS the FDIC-R's Motion for Summary Judgment against Certain Defendants [docket no. 29] and GRANTS the FDIC-R's Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment, on Certain Defendants' Counterclaims [docket no. 30]. A separate judgment shall issue forthwith.

**IT IS SO ORDERED this 17th day of September, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE